FILED

2009 JUN 11 P 1: 35

U.S. DISTRICT COURT
EASTERN DIST. TENN.

BY_____ DEP. CLERK

LARRY C. LAY, ROGER DALE PHILPOTT,
CAMPBELL P. RIDLEY, JR., RIDLEY FARM, a
Tennessee Partnership, WILLIAM DARYL BROWN,
INDIVIDUALLY and as Successor in Interest to
WILLIAM CLYDE BROWN, Deceased, JEWELL
BROTHERS, a Tennessee Partnership and
JEWELL BROTHERS, LLC., DOYLE EUGENE CARDIN,
RODRICK SWABE, PERRY PHILPOTT, JAY W. RHYNE, III,
DONALD BURTON ISBILL, DENNIS GERALD
PLEMONS, CHARLES PRICE PLEMONS,
TONY C. HALL, DALE T. HALL
ROBERT HENRY WALLEN, GARY WAYNE
WALLEN, JERRY D. HENSON, ROY E. SCARBROUGH,
JR., HALLIDAY FARMS, a Tennessee Partnership,
MERLIN BLACKWOOD, ESTES W. TAYLOR,
DOYLE G. PERRY, ILA DEAN BUNT,
and as Successor in Interest to MR. CLEO RAY BUNT,
FRANK A. BLADE, ROBERT E. DICKSON, JR., ROBERT
E. DICKSON, SR., GEORGE ROGERS GILLIAM, JOE
WILBURN GILLIAM & RACHEL GILLIAM, a
Tennessee Partnership, WILLIAM RONALD DINWIDDIE,
JOHN W. SATTERWHITE, JR., WALTER
STEVEN BAKER, THOMAS G. WOLAVER, MILLARD F.
MITCHUM, JR., SAMUEL STACEY LUNN,
DARRYL A. MASSEY & SAMMIE L. MASSEY,
a Tennessee Partnership, DONALD R. SMITH,
ROSCOE RAY FORSTER, DON ALLEN FORSTER,
TROY W. SMITH, RANDALL D. MILLSAPS,
STANLEY L. TEMPLETON, WILLIAM L. DeBUSK,
WILLIAM C. BREEDEN, WILLIAM G. BREEDEN,
ARTHUR MILLSAPS JERRY F. PHILLPS,
WILLIAM DANIEL ALEXANDER and
MARIAN ALEXANDER, Individually and as SUCCESSOR in
INTEREST to CLARENCE F. ALEXANDER, JR., a
Tennessee Partnership, GEORGE BROOKS and
CARL BROOKS, a Tennessee Partnership, CARL BROOKS,
Individually, CARL and GILENE GARDNER, a Tennessee
Partnership, PAT HICKMAN, PAUL WHITESIDE, and
WINFORD M. BAKER,

     Plaintiffs,

v.

BURLEY STABILIZATION CORPORATION,

    Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Civil Action
No. 3:09-CV-252

JURY DEMANDED

## COMPLAINT

Larry C. Lay, Roger Dale Philpott, Campbell P. Ridley, Jr., Ridley Farm, a Tennessee Partnership, William Daryl Brown, Individually and as Successor in Interest to William Clyde Brown, Deceased, Jewell Brothers, a Tennessee Partnership and Jewell Brothers, LLC., Doyle Eugene Cardin, Rodrick Swabe, Perry Philpott, Jay W. Rhyne, III, Donald Burton Isbill, Dennis Gerald Plemons, Charles Price Plemons, Tony C. Hall, Dale T. Hall, Robert Henry Wallen, Gary Wayne Wallen, Jerry D. Henson, Roy E. Scarbrough, Jr., Halliday Farms, a Tennessee Partnership, Merlin Blackwood, Estes W. Taylor, Doyle G. Perry, Ila Dean Bunt, and as Successor in Interest to Mr. Cleo Ray Bunt, Frank A. Blade, Robert E. Dickson, Jr., Robert E. Dickson, Sr., George Rogers Gilliam, Joe Wilburn Gilliam & Rachel Gilliam, a Tennessee Partnership, William Ronald Dinwiddie, John W. Satterwhite, Jr., Walter, Steven Baker, Thomas G. Wolaver, Millard F. Mitchum, Jr., Samuel Stacey Lunn, Darryl A. Massey And Sammie L. Massey, a Tennessee Partnership, Donald R. Smith, Roscoe Ray Forster, Don Allen Forster, Troy W. Smith, Randall D. Millsaps, Stanley L. Templeton, William L. DeBusk, William C. Breeden, William G. Breeden, Arthur Millsaps, Jerry F. Phillips, William Daniel Alexander and Marian Alexander, as Successor in Interest to Clarence F. Alexander, Jr., a Tennessee Partnership, George Brooks and Carl Brooks, a Tennessee Partnership, Carl Brooks, Individually, Carl and Gilene Gardner, a Tennessee Partnership, Pat Hickman and Winford M. Baker (hereinafter, collectively, "Plaintiffs"), by counsel, for their Complaint against the Defendant, Burley Stabilization Corporation ("BSC"), state as follows:

### PARTIES, JURISDICTION AND VENUE

1.      Plaintiff, Larry C. Lay ("Lay"), is a natural person and a citizen and resident of Madisonville, Monroe County, Tennessee, and is a member of the BSC.

2.      Plaintiff, Roger Dale Philpott ("Philpott"), is a natural person and a citizen and resident of Madisonville, Monroe County, Tennessee, and is a member of the BSC.

2

3.      Plaintiff, Campbell P. Ridley, Jr. ("Ridley"), is a natural person and a citizen and resident of Columbia, Maury County, Tennessee, and is a member of the BSC.

4.      Plaintiff, Ridley Farm, a Tennessee Partnership ("Ridley Farm"), is a Tennessee general partnership which has its principal place of business located at 6031 Trotwood in Columbia, Maury County, Tennessee, and is a member of the BSC.

5.      Plaintiff, William Daryl Brown ("Brown"), is a natural person and a citizen and resident of Williamsport, Maury County, Tennessee, and is a member of the BSC.  Mr. Brown is successor in interest to his father, William Clyde Brown, deceased, who was also a farmer and producer of burley tobacco, and was a member of the BSC.

6.      Plaintiff, Jewell Brothers ("Jewell"), was a Tennessee general partnership with its principal place of business located at 340 9th Avenue North in Franklin, Williamson County, Tennessee, and is a member the BSC.

7.      Plaintiff, Jewell Brothers, LLC, ("Jewell, LLC"), is a Tennessee limited liability corporation with its principal place of business located at 340 9th Avenue North in Franklin, Williamson County, Tennessee, and is a member of the BSC.

8.      Plaintiff, Doyle Eugene Cardin ("Cardin"), is a natural person and a citizen and resident of Madisonville, Monroe County, Tennessee, and is a member of the BSC.

9.      Plaintiff, Rodrick Swabe ("Swabe"), is a natural person and a citizen and resident of Madisonville, Monroe County, Tennessee, and is a member of the BSC.

10.      Plaintiff, Perry Philpott ("Philpott"), is a natural person and a citizen and resident of Englewood, McMinn County, Tennessee, and is a member of the BSC.

11.      Plaintiff, Jay W. Rhyne, III ("Rhyne"), is a natural person and a citizen and resident of Greenback, Loudon County, Tennessee, and is a member of the BSC.

12.      Plaintiff, Donald Burton Isbill ("Isbill"), is a natural person and a citizen and resident of Madisonville, Monroe County, Tennessee, and is a member of the BSC.

3

13.     Plaintiff, Dennis Gerald Plemons ("Plemons"), is a natural person and a citizen and resident of Madisonville, Monroe County, Tennessee, and is a member of the BSC.

14.     Plaintiff, Charles Price Plemons ("Plemons"), is a natural person and a citizen and resident of Madisonville, Monroe County, Tennessee, and is a member of the BSC.

15.     Plaintiff, Tony C. Hall ("Hall"), is a natural person and a citizen and resident of Madisonville, Monroe County, Tennessee, and is a member of the BSC.

16.     Plaintiff, Dale T. Hall ("Hall"), is a natural person and a citizen and resident of Vonore, Monroe County, Tennessee, and is a member of the BSC.

17.     Plaintiff, Robert Henry Wallen ("Wallen"), is a natural person and a citizen and resident of Knoxville, Knox County, Tennessee, and is a member of the BSC.

18.     Plaintiff, Gary Wayne Wallen ("Wallen"), is a natural person and a citizen and resident of Knoxville, Knox County, Tennessee, and is a member of the BSC.

19.     Plaintiff, Jerry D. Henson ("Henson"), is a natural person and a citizen and resident of Summertown, Lawrence County, Tennessee, and is a member of the BSC.

20.     Plaintiff, Roy E. Scarbrough, Jr. ("Scarbrough"), is a natural person and a citizen and resident of Maryville, Blount County, Tennessee,  and is a member of the BSC.

21.     Plaintiff, Halliday Farms, a Tennessee Partnership ("Halliday Farms"), is a Tennessee general partnership which has its principal place of business located at 3372 Campbellsville Pike, Columbia, Maury County, Tennessee, and is a member of the BSC.

22.     Plaintiff, Merlin Blackwood ("Blackwood"), is a natural person and a citizen and resident of Ethridge, Lawrence County, Tennessee, and is a member of the BSC.

23.     Plaintiff, Estes W. Taylor ("Taylor"), is a natural person and a citizen and resident of Summertown, Lawrence County, Tennessee, and is a member of the BSC.

24.     Plaintiff, Doyle G. Perry ("Perry"), is a natural person and a citizen and resident of Lawrenceburg, Lawrence County, Tennessee, and is a member of the BSC.

4

25. Plaintiff, Ila Dean Bunt ("Bunt"), is a natural person and a citizen and resident of Lawrenceburg, Lawrence County, Tennessee, Ms. Bunt is successor in interest to her husband, Mr. Cleo Ray Bunt, deceased, who was a member of the BSC.

26. Plaintiff, Frank A. Blade ("Blade"), is a natural person and a citizen and resident of Lawrenceburg, Lawrence County, Tennessee, and is a member of the BSC.

27. Plaintiff, Robert E. Dickson, Jr. ("Dickson."), is a natural person and a citizen and resident of Summertown, Lawrence County, Tennessee, and is a member of the BSC.

28. Plaintiff, Robert E. Dickson, Sr. ("Dickson"), is a natural person and a citizen and resident of Summertown, Lawrence County, Tennessee, and is a member of the BSC.

29. Plaintiff, George Rogers Gilliam ("Gilliam"), is a natural person and a citizen and resident of Mt. Pleasant, Maury County, Tennessee, and is a member of the BSC.

30. Plaintiffs, Joe Wilburn Gilliam and Rachel Gilliam, ("Gilliam"), is a Tennessee Partnership which has its principal place of business located at 1250 South Crossbridges Road, Mt. Pleasant, Maury County, Tennessee, and is a member of the BSC.

31. Plaintiff, William Ronald Dinwiddie ("Dinwiddie"), is a natural person and a citizen and resident of Columbia, Maury County, Tennessee, and is a member of the BSC.

32. Plaintiff, John W. Satterwhite, Jr. ("Satterwhite"), is a natural person and a citizen and resident of Columbia, Maury County, Tennessee, and is a member of the BSC.

33. Plaintiff, Walter Steven Baker ("Baker"), is a natural person and a citizen and resident of Spring Hill, Maury County, Tennessee, and is a member of the BSC.

34. Plaintiff, Thomas G. Wolaver ("Wolaver"), is a natural person and a citizen and resident of Mt. Pleasant, Maury County, Tennessee, and is a member of the BSC.

35. Plaintiff, Millard F. Mitchum, Jr. ("Mitchum"), is a natural person and a citizen and resident of Spring Hill, Tennessee, and is a member of the BSC.

36.     Plaintiff, Samuel Stacey Lunn ("Lunn"), is a natural person and a citizen and resident of Spring Hill, Tennessee, and is a member of the BSC.

37.     Plaintiff, Darryl A. Massey, is a natural person and a citizen and resident of Mt. Pleasant, Maury County, Tennessee, and is a member of the BSC. Plaintiff, Sammie L. Massey, is a natural person and a citizen and resident of Mt. Pleasant, Maury County, Tennessee. Ms. Massie is Successor in Interest to her husband, Bobby E. Massey, deceased, who was a member of the BSC, and who, in partnership with his son Darryl A. Massey (collectively, "Massey"), delivered and consigned burley tobacco produced during the crop year 1982 to and with the BSC, and periodically, for other crop years, did deliver and consign burley tobacco to and with the BSC.

38.     Plaintiff, Donald R. Smith ("Smith"), is a natural person and a citizen and resident of Maryville, Blount County, Tennessee, and is a member of the BSC.

39.     Plaintiff, Roscoe Ray Foster ("Forster"), is a natural person and a citizen and resident of Maryville, Blount County, Tennessee, and is a member of the BSC.

40.     Plaintiff, Don Allen Forster ("Forster"), is a natural person and a citizen and resident of Maryville, Blount County, Tennessee, and is a member of the BSC.

41.     Plaintiff, Troy W. Smith ("Smith"), is a natural person and a citizen and resident of Maryville, Blount County, Tennessee, and is a member of the BSC.

42.     Plaintiff, Randall D. Millsaps ("Millsaps"), is a natural person and a citizen and resident of Madisonville, Monroe County, Tennessee, and is a member of the BSC.

43.     Plaintiff, Stanley L. Templeton ("Templeton"), is a natural person and a citizen and resident of Decatur, Meigs County, Tennessee, and is a member of the BSC.

44.     Plaintiff, William L. DeBusk ("DeBusk"), is a natural person and a citizen and resident of New Tazewell, Claiborne County, Tennessee, and is a member of the BSC.

45.     Plaintiff, William C. Breeden ("Breeden"), is a natural person and a citizen and resident of Decatur, Meigs County, Tennessee, and is a member of the BSC.

6

46.     Plaintiff, William G. Breeden ("Breeden"), is a natural person and a citizen and resident of Decatur, Meigs County, Tennessee, and is a member of the BSC.

47.     Plaintiff, Arthur Millsaps ("Millsaps"), is a natural person and a citizen and resident of Madisonville, Monroe County, Tennessee, and is a member of the BSC.

48.     Plaintiff, Jerry F. Phillips ("Phillips"), is a natural person and a citizen and resident of Ethridge, Lawrence County, Tennessee, and is a member of the BSC.

49.     Plaintiff, William Daniel Alexander ("Alexander"), is a natural person and a citizen and resident of Mt. Pleasant, Maury County, Tennessee. Mr. Alexander is a farmer and producer of burley tobacco, is a member of the BSC, and in partnership with his father, Clarence F. Alexander, Jr. (deceased), delivered and consigned burley tobacco to and with the BSC. Plaintiff, Marian Alexander ("Alexander"), is a natural person and a citizen and resident of Mt. Pleasant, Maury County, Tennessee. Ms. Alexander is Successor in Interest to Clarence F. Alexander, Jr., deceased, who was also a farmer and producer of burley tobacco, and a member of the BSC, and who, in partnership with his son William Daniel Alexander, delivered and consigned burley tobacco to and with the BSC.

50.     Plaintiff, George Brooks ("Brooks"), is a natural person and a citizen and resident of Mt. Pleasant, Loudon County, Tennessee, and is a member of the BSC, and together in partnership with his son, Carl Brooks, delivered and consigned burley tobacco to and with the BSC.

51.     Plaintiff, Carl Brooks ("Brooks"), is a natural person and a citizen and resident of Mt. Pleasant, Loudon County, Tennessee, is a member of the BSC, and in partnership with his father, George Brooks, delivered and consigned burley tobacco to and with the BSC. Beginning in 1989, Carl Brooks did, individually, farm and produce burley tobacco, and did periodically consign burley tobacco to and with the BSC.

7

52.     Plaintiffs, Carl and Gilene Gardner ("Gardners"), is a Tennessee Partnership, with its principal place of business at 3395 Leatherwood Road, Williamsport, Maury County, Tennessee, and is a member of the BSC.

53.     Plaintiff, Pat Hickman ("Hickman"), is a natural person and a citizen and resident of Loudon County, Tennessee, and is a member of the BSC.

54.     Plaintiff, Paul Whiteside ("Whiteside"), is a natural person and a citizen and resident of Hampshire, Maury County, Tennessee, and is a member of the BSC.

55.     Plaintiff, Winford M. Baker ("Baker"), is a natural person and a citizen and resident of Germantown, Tennessee, and is a member of the BSC.

56.     Defendant, BSC, is a Tennessee non-profit corporation, and is an agricultural cooperative association within the meaning of the Tennessee Cooperative Marketing Law, Tenn. Code Ann. Title 43, Chapter 16. BSC maintains its principal place of business at 4320 McCalla Avenue, Knoxville, Knox County, Tennessee.   Because the BSC is a non-stock agricultural cooperative corporation, it is subject to the provisions of the Tennessee Nonprofit Corporation Act, Tenn. Code Ann. Title 48, Chapters 51-68.  A true copy of the Articles of Incorporation of the BSC is attached hereto and made a part hereof as **Exhibit A** ("BSC Articles of Incorporation").

57.     Jurisdiction in proper in this Court pursuant to U.S.C. §1331 because this action arises under the laws of the United States and/or Plaintiffs' rights to relief necessarily depend on the resolution of a substantial question of federal law.

58.     Venue is proper in this Court because the BSC's principal place of business is located within this judicial district.

59.     This action is brought by more than 50 BSC members, each of whom is currently a member of the BSC.

## GENERAL ALLEGATIONS

60.     The BSC was formed in 1953, and now has a perpetual corporate duration.

8

61.     The BSC Articles of Incorporation, at Article III, Paragraph (a), provide that the BSC shall have the power "to engage in any activity in connection with the marketing, selling, preserving, harvesting, drying, processing, manufacturing, canning, packing, grading, storing, handling, or utilization of any agricultural products produced or delivered to it by its members, or the manufacturing or marketing of the by-products thereof; or any activity in connection with the purchase, hiring, or use by its members of supplies, machinery, or equipment; or in the financing of any such activities; or in any one or more of the activities specified in this section; and the Association may also buy, sell and deal in the agricultural products of non-members to an amount not greater in value than such as is handled by it for its members."

62.     The BSC Articles of Incorporation, at Article VII, provide that "the Association shall be operated on a non-profit cooperative basis for the mutual benefit of its members as producers . . . ."

63.     Upon information and belief, in order to become a member of the BSC, burley producers must execute a Marketing Agreement that contains the terms of the contractual relationship between the BSC and each individual member.

64.     For many years, the purpose and function of the BSC was to administer the federal burley tobacco price support program, formerly codified at 7 U.S.C. §§ 1445—1445-3 (the "Act"), in order to make price support available to producers of burley tobacco in Tennessee, North Carolina and Virginia.

65.     Under the federal burley tobacco price support system, during each burley tobacco crop year at least since the 1982 burley tobacco crop year, and upon information and belief since the inception of the federal burley tobacco price support program, BSC received and accepted burley tobacco from its producer/members for which there was no third party buyer at auction (*i.e.*, a tobacco company) for consignment sale. The BSC made an initial advance payment (singly, an "Initial Advance," and collectively the "Initial Advances") to the delivering/consigning BSC

9

producer/member for such delivered/consigned burley tobacco, based on the federal price support amount; divided such burley tobacco into grades or pools; processed such burley tobacco for storage; stored such burley tobacco; and thereafter sold or otherwise disposed of such burley tobacco, without limitation, directly to third-party tobacco companies. In so doing, the BSC acted as the agent of each BSC producer/member who delivered and consigned burley tobacco to and with the BSC.

66.     At all times pertinent hereto, the BSC pledged such burley tobacco delivered and consigned to it by its producer/members as collateral for loans from the Commodity Credit Corporation ("CCC") and/or other agricultural lenders, and utilized the loan proceeds for the Initial Advances.

67.     The Fair and Equitable Tobacco Reform Act of 2004 ("FETRA"), codified at 7 U.S.C. §§ 518-519a, repealed the Act, and the federal burley tobacco price support program has been discontinued. Upon information and belief, pursuant to FETRA, all outstanding loans from the CCC to the BSC have been satisfied, leaving large quantities of loan pool tobacco (the "FETRA tobacco") to be liquidated.

68.     Pursuant to FETRA, in 2005, the CCC released approximately 16.1 million pounds of FETRA tobacco to the BSC to be sold by the BSC on behalf of its producer/members free and clear of any claim or interest of the CCC.

69.     Pursuant to express or implied contractual obligations between the BSC and its producer/members and/or applicable statutes and/or common law, the producer/members of the BSC are entitled to a distribution of the net proceeds from the sale of the FETRA tobacco.

70.     Upon information and belief, the BSC sold burley tobacco from the 1982 Pool Crop, the 1983-2004 Pool Crops, and the FETRA tobacco at a profit, but has failed and refused to distribute the profits to the producer/members of the BSC who consigned and delivered the burley tobacco to and with the BSC.

10

71.     Defendants have fraudulently concealed from Plaintiffs material facts pertaining to the sale of tobacco as alleged herein by intentionally withholding or failing to disclose information to the BSC membership despite a duty to do so, and have engaged in an ongoing course of conduct designed to conceal such facts from its membership.

72.     No demand for action by the BSC's directors has been made pursuant to T.C.A. §48-56-401 because such a demand would have been futile given the defenses asserted and positions taken by the BSC in the original civil action styled <u>Larry C. Lay, et al. v. BSC, et al</u> in the Knox County, Tennessee Circuit Court (Case No. C-05-019105), and in the original civil action styled <u>Larry C. Lay, et al v. BSC</u> in the Knox County, Tennessee Chancery Court (Case No. 169767-2), in which actions Plaintiffs asserted the same or substantially similar claims as Plaintiffs are asserting here.

### Allegations Concerning the 1982 Pool Crop

73.     The burley tobacco crop in 1982 was of record proportions, as a result of which, a significant portion of the burley tobacco crop produced by BSC members did not sell at auction to third parties during the 1982 crop year marketing season, and was thereafter delivered and consigned to and with the BSC by producer/members of the BSC and became the 1982 Pool Crop.

74.     In the early 1990's, an opportunity arose for the BSC to sell the 1982 Pool Crop to a third-party tobacco company.

75.     Upon information and belief, in or around 1991, the BSC obtained a loan from a private bank and fully repaid the remaining balance the BSC owed to the CCC under the 1982 crop year loan agreement, thereby redeeming the 1982 Pool Crop from the CCC pursuant to the terms of the 1982 crop year loan agreement.

76.     Upon information and belief, in addition to the private loan, the CCC released funds from the BSC's No Net Cost Fund or Account to help the BSC retire the debt on the 1982 Pool Crop and redeem the crop from the CCC.

11

77. Upon information and belief, once the balance of the 1982 crop year loan was paid off, the CCC expressly released its interest in the tobacco pledged as security for the 1982 crop year loan and any proceeds received by the BSC from the sale of the tobacco collateral.

78. Upon information and belief, after the BSC redeemed the 1982 Pool Crop from the CCC, the BSC sold the 1982 Pool Crop to a third-party tobacco company and repaid the outstanding balance on the private loan, and in the process realized a multi-million dollar profit.

79. Upon information and belief, because the BSC redeemed the 1982 Pool Crop from the CCC under the terms of the 1982 crop year loan agreement, the profit realized by the BSC on the sale of the 1982 Pool Crop accrued to the BSC free and clear of any claim or interest of the CCC and unencumbered by the requirements of the Act.

80. The BSC has failed and refused to distribute any of the profits from the sale of the 1982 Pool Crop to the BSC producer/members who delivered and consigned the 1982 Pool Crop to and with the BSC.

81. Under the Cooperative Marketing Law and applicable Tennessee common law, the profits the BSC realized on the sale of the 1982 Pool Crop, along with all income generated by investment of those proceeds, net of any reasonable reserves maintained by the BSC pursuant to the Cooperative Marketing Law, were required to be distributed to the producer/members of the BSC who delivered/consigned the 1982 Pool Crop to and with the BSC.

82. Upon information and belief, the BSC's obligation to make distribution(s) of the profits from the 1982 Pool Crop is also contained in the loan agreements between the BSC and the CCC.

### Allegations Concerning the 1983-2004 Pool Crops

83. For each of the crop years 1983-2004, a portion of the burley tobacco crop produced by BSC members during such crop years was not sold at auction to third-parties during the marketing season, and was thereafter delivered and consigned to and with the BSC by producer/members of the

12

BSC, and respectively became the 1983-2004 Pool Crops. Upon information and belief, burley tobacco from the 1983-2004 Pool Crops has been sold to third parties, at which time BSC fully repaid the indebtedness incurred for purposes of making the Initial Advances and certain storage, processing and handling charges associated therewith, and BSC has realized profits for the producer/members of the BSC who delivered and consigned the 1983-2004 Pool Crops to and with the BSC.

84.     Upon information and belief, the CCC released its interest in certain tobacco pledged as security for the 1983-2004 crop year loans and any proceeds received by the BSC from the sale of the tobacco collateral, and as a result, the profit realized by the BSC on the sale of certain tobacco from the 1983-2004 Pool Crops accrued to the BSC free and clear of any claim or interest of the CCC and unencumbered by the requirements of the Act.

85.     The BSC has failed and refused to distribute any profits realized on the 1983-2004 Pool Crops to the BSC producer/members who delivered and consigned the 1983-2004 Pool Crops to and with the BSC.

86.     Under the Cooperative Marketing Law and applicable Tennessee common law, the profits realized by the BSC based on the sales of the 1983-2004 Pool Crops, along with all income generated by investment of those proceeds, net of any reasonable reserves maintained by the BSC pursuant to the Cooperative Marketing Law, is required to be distributed to the producer members of the BSC who had consigned and delivered the 1983-2004 Pool Crops to and with the BSC.

87.     Upon information and belief, the BSC's obligation to make distribution(s) of these described profits for the 1983-2004 Pool Crops is also contained in the loan agreements between the BSC and the CCC.

### Allegations Concerning the FETRA Tobacco

88.     Pursuant to FETRA, in 2005, the CCC released approximately 16.1 million pounds of FETRA tobacco to the BSC to be sold on behalf of the BSC's producer/members.

13

89.    The CCC has released any claim to or interest in the FETRA tobacco, or any claim to or interest in the proceeds from the BSC's sale of the FETRA tobacco.

90.    Upon information and belief, the BSC has sold all or part of the FETRA tobacco, but has failed and refused to distribute the profits to the BSC's producer/members.

## COUNT I
## DISGORGEMENT

91.    Plaintiffs incorporate by reference numerical paragraphs 1-90 herein as if fully set forth, and further allege as follows:

92.    As the result of selling its producer/members' tobacco as described herein, the BSC has made and kept profits for itself.

93.    The Tennessee Cooperative Marketing Law and the Tennessee Non-Profit Corporation Act prohibit the BSC from making and keeping profits for itself.

94.    Pursuant to the Tennessee Cooperative Marketing Law, the Tennessee Non-Profit Corporation Act and other relevant law, the BSC is required to disgorge its profits, and any accumulated income derived therefrom (net of a reasonable reserve), and distribute those profits to the producer/members whose tobacco generated the retained profits and resulting income.

## COUNT II
## DECLARATORY JUDGMENT

95.    Plaintiffs incorporate by reference numerical paragraphs 1-94 herein as if fully set forth, and further allege as follows:

96.    Pursuant to express or implied contracts between the BSC and its members and/or applicable statutes and/or common law, the Plaintiffs and other members of the BSC are the rightful and exclusive owners of the loan pool stocks of tobacco returned to the BSC under FETRA, the 1982 Pool Crop and the 1983-2004 Pool Crops.

97.    Plaintiffs are entitled to a distribution of the proceeds from the sale of the FETRA tobacco, the 1982 Pool Crop and the 1983-2004 Pool Crops pursuant to express or implied

14

contractual obligations between the BSC and its members and/or applicable statutes and/or common law.

98. Pursuant to Tenn. Code Ann. § 29-14-101, et seq. and Tenn. R. Civ. P. 57, Plaintiffs seek a declaratory judgment from this Court concerning the rights, status, or other legal relations of the parties with regard to the FETRA tobacco, the 1982 Pool Crop and the 1983-2004 Pool Crops.

99. An actual and justifiable controversy exists between the parties regarding the proceeds from the sale of the FETRA tobacco, the 1982 Pool Crop and the 1983-2004 Pool Crops.

## COUNT III
## CONVERSION

100. Plaintiffs incorporate by reference numerical paragraphs 1-99 herein as if fully set forth, and further allege as follows:

101. By its failure to distribute the proceeds realized from the sale of the 1982 Pool Crop, the 1983-2004 Pool Crops, or the FETRA tobacco to its producer/members, the BSC has willfully, intentionally, knowingly and maliciously interfered with possession of, and intentionally acted to deprive its producer/members, including Plaintiffs, of possession and the benefit of those funds. The funds in question are, respectively, personal property of the BSC's producer/members, including Plaintiffs.

102. Upon information and belief, the BSC has fraudulently concealed and/or has intentionally withheld material documents and information pertaining to the conduct alleged herein from the Plaintiffs in an effort to conceal the conversion of funds alleged herein.

103. Plaintiffs have been unable to make an informed demand for return of the funds because they lack the particular information regarding the amounts derived from the sales of the 1982 Pool Crop, the 1983-2004 Pool Crops, and the FETRA tobacco, and the subsequent investment income derived therefrom, but make such a demand herein by means of the request for disgorgement of the funds.

15

104. Although acting in a fiduciary capacity, the BSC was not privileged to retain the funds, ownership of which resides with the producer/members of the BSC, but the BSC intends to remain in possession and control of the funds in a manner that materially interferes with the possessory rights of Plaintiffs and the producer/members of the BSC.

105. Defendant's conversion and retention of the funds at issue constitutes a continuing course of action.

106. As a result of the conversion of the funds by the BSC, Plaintiffs and the producer/members of the BSC, have been damaged in an amount to be determined at trial.

## COUNT IV
## NEGLIGENT MISREPRESENTATIONS

107. Plaintiffs incorporate by reference numerical paragraphs 1-106 herein as if fully set forth and further allege as follows:

108. By engaging in the tortious conduct and breaches of statutory and common-law duties as described herein, the BSC negligently supplied false material information, and/or omitted to provide material information, to the Plaintiffs and the producer/members of the BSC in connection with the sale of the 1982 Pool Crop, the 1983-2004 Pool Crops, and the FETRA tobacco, including:

      (a)      The accumulated profits on the sale of the 1982 Pool Crop; the amounts borrowed and repaid in relation to the sale of the 1982 Pool Crop, and investments purchased with the net profits realized on the 1982 Pool Crop, and the investment income therefrom;

      (b)      The accumulated profits on any sales of the 1983-2004 Pool Crops, the amounts borrowed and repaid in relation to any sales of the 1983-2004 Pool Crops, and investments purchased with any net profits realized on the 1983-2004 Pool Crops, and the investment income therefrom; and,

16

(c)     The accumulated profits on the sale of the FETRA tobacco; and investments purchased with any profits realized on the FETRA tobacco, and the investment income therefrom.

109.    The BSC was acting in the course of BSC's business in negligently supplying this false information and/or omitting to provide this material information. The BSC had a pecuniary interest in the transactions with respect to which it negligently supplied false information and/or omitted to provide material information.

110.    The BSC failed to exercise reasonable care and was grossly negligent in supplying this false information, and for omitting to provide material information to the Plaintiffs and the producer/members of the BSC.

111.    The false information negligently supplied, and/or the material information omitted to be supplied by the BSC was intended for use and guidance of the Plaintiffs and producer/members of the BSC in their business affairs and transactions; and further misled the Plaintiffs and producer/members of the BSC in their business affairs and transactions.

112.    Plaintiffs and producer/members of the BSC reasonably and justifiably relied on the false information negligently supplied and the material information omitted by the BSC.

113.    Defendant's negligent misrepresentations as described herein constitute a continuing course of action.

114.    As a result of their reliance on the BSC's negligent misrepresentations, Plaintiffs and producer/members of the BSC have suffered damages in an amount to be determined at trial.

## COUNT V
## BREACH OF CONTRACT

115.    Plaintiffs incorporate by reference numerical paragraphs 1-114 herein as if fully set forth and further allege as follows:

17

116.     Upon information and belief, Plaintiffs, and each and every producer/member of the BSC, who delivered and consigned their burley tobacco that was unsold to a third-party to and with the BSC, made and entered into express and/or implied contracts with the BSC.

117.     The BSC has breached its obligations under such express and/or implied contracts by failing to make a distribution of profits realized on the sale of the 1982 Pool Crop, the 1983-2004 Pool Crops, or the FETRA tobacco required thereunder to the delivering and consigning producer/members.

118.     Upon information and belief, the BSC has fraudulently concealed and/or has intentionally withheld material documents and information pertaining to the conduct alleged herein from the Plaintiffs and the producer/members of the BSC.

119.     Defendant's breaches of contract as described herein constitute a continuing course of action.

120.     As a result of the above-described breaches of contract, Plaintiffs and producer/members of the BSC have suffered damages in an amount to be determined at trial.

## COUNT VI
## BREACH OF CONSTRUCTIVE TRUST

121.     Plaintiffs incorporate by reference numerical paragraphs 1-120 herein as if fully set forth and further allege as follows:

122.     With respect to the profits the BSC realized on the sale of the 1982 Pool Crop, the 1983-2004 Pool Crops, and the FETRA tobacco, the BSC, on behalf of its producer/members who delivered and consigned tobacco to and with the BSC, acted as constructive trustee of such funds in favor of the producer/members who delivered and consigned the burley tobacco to and with the BSC.

123.     In its capacity as constructive trustee, the BSC received the funds representing the profits on the sale of the 1982 Pool Crop, the 1983-2004 Pool Crops, and the FETRA tobacco, with

18

notice that the producer/members who delivered and consigned tobacco to and with the BSC were entitled to the funds.

124. In its capacity as constructive trustee, the BSC willfully and intentionally failed and refused to deliver funds representing the profits on the sale of the 1982 Pool Crop, the 1983-2004 Pool Crops, and the FETRA tobacco to the producer/members who delivered and consigned tobacco to the BSC, in violation of its duties to the producer/members.

125. Upon information and belief, the BSC has fraudulently concealed and/or has intentionally withheld material documents and information pertaining to the conduct alleged herein from the Plaintiffs and the producer/members of the BSC in an effort to conceal the actions, which results in a constructive trust.

126. The breaches of this constructive trust relationship as described herein constitute a continuing course of action.

127. As a result of the BSC's breaches of this constructive trust relationship, Plaintiffs and the producer/members of the BSC have been damaged in an amount to be determined at trial.

## COUNT VII
## DEMAND FOR AN ACCOUNTING

128. Plaintiffs incorporate by reference numerical paragraphs 1-127 herein as if fully set forth and further allege as follows:

129. Plaintiffs demand a full and complete accounting of (i) all monies received from the sale of the 1982 Pool Crop, the 1983-2004 Pool Crops, and the FETRA tobacco; (ii) all accumulated profits on the sale of the 1982 Pool Crop, the 1983-2004 Pool Crops, and the FETRA tobacco; (iii) all amounts borrowed and repaid in connection with the 1982 Pool Crop, the 1983-2004 Pool Crops, and the FETRA tobacco; (iv) all profits realized on sales of the 1982 Pool Crop, the 1983-2004 Pool Crops, and the FETRA tobacco; (v) all investments of whatever kind purchased with the profits realized on the sales of the 1982 Pool Crop, the 1983-2004 Pool Crops, and the FETRA

19

tobacco; (vi) all investment income earned on investments purchased with the proceeds from the sale of the 1982 Pool Crop, the 1983-2004 Pool Crops, and the FETRA tobacco; (vii) the disposition of all investment income derived from the sale of 1982 Pool Crop, the 1983-2004 Pool Crops, and the FETRA tobacco, and annual net income from all operations from January 1, 1991 to the present; and (viii) the amount of FETRA tobacco transferred to the BSC pursuant to FETRA and currently being held for sale.

130.    Plaintiffs further demand, for each crop year from 1982 to the present, a full and complete accounting of all expenses paid by the BSC to handle, grade, process, dry, re-dry, store and sell the consigned burley tobacco; and all proceeds, profits, or other monies of whatever kind, received by the BSC as a result of the sales of each of the 1982 Pool Crop, the 1983-2004 Pool Crops, or the FETRA tobacco to the present, including any pro-rata or partial payments received for those years for which the crop has not yet been sold.

131.    Plaintiffs further demand a full and complete accounting of all expenditures, including all supporting documentation for such expenditures, of the BSC for all years from 1990 to the present.

## COUNT VIII
## PUNITIVE DAMAGES

132.    Plaintiffs incorporate by reference numerical paragraphs 1-131 herein as if fully set forth and further allege as follows:

133.    In engaging in the breaches of contract, tortious conduct and breaches of statutory and common-law duties owed to the Plaintiffs and the producer/members of BSC, as described herein, the BSC made intentional misrepresentations, undertook intentional and/or grossly negligent acts, intentional and/or grossly negligent oppressive acts, intentional and/or grossly negligent malicious acts, concealed material facts, and otherwise committed acts of deceit and oppression, all amounting to willful, malicious, oppressive, fraudulent and/or grossly negligent conduct towards the

20

Plaintiffs and the producer/members of the BSC within the meaning of the Tennessee Nonprofit Corporation Act, the Cooperative Marketing Law and applicable common law.

134.    In engaging in the acts described in the preceding numerical paragraph, the BSC expected and intended, or should have expected, for injury and damages to result to the Plaintiffs and the producer/members of the BSC, and such injury and damages did occur, as alleged hereinabove.

135.    As a result of these acts of deceit, oppression, malice, fraud and/or gross negligence by the BSC, which resulted in injury to the Plaintiffs and the producer/members of the BSC, Plaintiffs and the producer/members of the BSC are entitled to recover punitive damages, in an amount to be determined at trial but not less than ten times the economic damages recovered herein from the BSC to punish the Defendant and discourage it from engaging in similar conduct in the future.

**WHEREFORE**, Plaintiffs demand the following relief:

A.    Judgment against Defendant, BSC, for compensatory damages, including pre-judgment and post-judgment interest, in amount to be determined at trial;

B.    Judgment against Defendant, BSC, for punitive damages, in amount to be determined at trial;

C.    Disgorgement of all funds which may be properly distributed to the Plaintiffs, and to the producer/members of the BSC, in a means and method to be determined by the Court;

D.    Recovery of all costs expended including, but not limited to, attorney's fees and other costs;

E.    An Order of this Court requiring the accounting requested hereinabove;

F.    A jury is demanded to try all issues triable by a jury; and

F.    Any and all other relief to which Plaintiffs and the producer/members of the BSC are or may appear to be entitled.

21

STATE OF TENNESSEE )
)
COUNTY OF KNOX )

Larry C. Lay, named Plaintiff hereinabove, makes oath that the forgoing statements are true and correct to the best of his knowledge and belief, and that those statements made upon information and belief he verify believes to be true.

Sworn to and subscribed before me this
_10th_ day of _JUNE_ , 2009.

_Steve Gevedon_
Notary Public

My commission expires: _9-6-2011_

**RESPECTFULLY SUBMITTED** this _11th_ day of _June_ , 2009.

**RONALD T. HILL, ESQ. (BPR#011283)**
**CHERYL G. RICE, ESQ. (BPR#021145)**
EGERTON, McAFEE, ARMISTEAD & DAVIS, P.C.
1400 Riverview Tower
900 South Gay Street
P.O. Box 2047
Knoxville, Tennessee 37901
(865) 546-0500

**LUCY D. HENSON**
**LUCY D. HENSON, PLLC**
**118 South Second Street**
**Pulaski, TN 38478**

**M. CLARK SPODEN**
FROST BROWN TODD LLC
424 Church Street, Suite 1600
Nashville, Tennessee 37219-2308

Attorneys for Plaintiffs

22