**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TENNESSEE**
**AT KNOXVILLE**


| | |
|---|---|
| **LARRY C. LAY, et al.,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **v.** ) | **No.  3:09-CV-252** |
| ) | **(Phillips)** |
| **BURLEY STABILIZATION CORPORATION,** ) | |
| ) | |
| **Defendant.** ) | |


**MEMORANDUM OPINION**


Plaintiffs are members of the Burley Stabilization Corporation (BSC), which

is an agricultural cooperative established to aid burley tobacco growers.  With this lawsuit,

plaintiffs seek disgorgement of funds allegedly owed them by BSC, a Tennessee nonprofit

agricultural cooperative which supports approximately 140,000 tobacco farmers in

Tennessee, North Carolina and Virginia.  Defendant has moved to dismiss this action for

lack of subject matter jurisdiction asserting that because plaintiffs' claims are derivative in

nature, plaintiffs claims must be dismissed for failure to make a prelitigation demand upon

BSC's board of directors.  BSC has also filed a counterclaim against plaintiffs requesting

expenses and attorney fees incurred in responding to the instant complaint.  For the

reasons which follow, the defendant's motions will be granted, and this action will be dismissed.

### I. Factual and Procedural Background

In 1938, Congress established a program of federal tobacco quotas and price supports designed to stabilize and increase prices paid to America's tobacco growers. *See* 7 U.S.C. §§ 1281, *et seq.* BSC is a nonprofit agricultural cooperative association organized in 1953 under Tennessee law to support growers of burley tobacco within its geographic area, which includes portions of Tennessee, North Carolina, and Virginia. In addition to other functions, BSC serves as an agent of Commodity Credit Corporation (CCC) and the United States Department of Agriculture (USDA) to administer the federal tobacco price-support program. The Secretary of Agriculture and the CCC administered the price support program through cooperative grower associations like BSC. In brief, USDA annually set a support price level for various types of eligible tobacco. CCC then made loans to BSC and other similar grower associations, which used the loans to purchase eligible tobacco through various tobacco auctions at the support price when a grower was unable to command a higher price on the open market. CCC would then take a security interest in all tobacco so purchased, which was accounted for separately by crop year. BSC then processed and stored the tobacco and attempted to resell it at a price sufficient to repay CCC and recover its costs. Plaintiffs are tobacco producers and members of BSC who received federal price support on burley tobacco sold through the federal price support program in one or more of the 1982 through 2004 crop years.

With the Fair and Equitable Tobacco Reform Act of 2004 (FETRA), Congress effectively terminated the tobacco price support program. In doing so, Congress enacted 7 U.S.C. § 519 to "provide for the orderly disposition of [collateral] tobacco held by an association (like BSC) that has entered into a loan agreement with the [CCC]." Under the FETRA program, CCC can dispose of certain collateral tobacco in a manner to be determined by the Secretary. 7 U.S.C. §519(b)-(c). FETRA directs CCC to apply receipts from any such tobacco sales, together with the funds in BSC's No Net Cost Account, toward any outstanding CCC loans. Pursuant to FETRA, any funds remaining in BSC's No Net Cost Account after CCC has been fully paid will be transferred to BSC for distribution to the "producers of quota tobacco in accordance with a plan approved by the Secretary." *Id.* at § 519(d).

On February 14, 2005, the plaintiffs in this case filed a substantially similar complaint in the Knox County Circuit Court. The essence of that lawsuit sought to require BSC to disgorge monies collected under FETRA and essentially hasten the dissolution of the BSC. In the Circuit Court action, the state court held that plaintiffs' claims were derivative in nature and had not been brought by the requisite number of plaintiffs or verified, as required by T.C.A. §48-56-401 for derivative claims. The state court also ruled that CCC was a necessary party and plaintiffs were ordered to amend their complaint accordingly. Once that amendment was made, the matter was removed to this court on the basis of federal question jurisdiction.

On March 14, 2007, this court issued a Memorandum and Order agreeing with the state court that plaintiffs' claims were derivative in nature and dismissing all of plaintiffs' claims against BSC for failure to comply with the requirements for asserting their derivative claims. Specifically, the court found that, in accordance with Tennessee law, plaintiffs' claims should be dismissed as they neither made an appropriate demand on BSC nor pleaded with particularity why such demand should be excused.

On May 29, 2007, plaintiffs filed essentially the same complaint in the Knox County Chancery Court, which was removed to this court on the basis of federal question and diversity jurisdiction. Among other relief, plaintiffs sought "disgorgement of all funds which may be properly distributed to the named plaintiffs and to the members of the asserted classes, in a means and method to be determined by the court" and an accounting for these funds. Plaintiffs argued that their action was a direct action as opposed to a derivative action under which they would be required to comply with all of the requirements for derivative suits under T.C.A. § 48-56-401. On October 23, 2007, this court again dismissed plaintiffs' claims. In addition to holding that plaintiffs were collaterally estopped from relitigating the court's previous dismissal, the court again held that plaintiffs' claims were derivative and could not be maintained given plaintiffs' failure to satisfy the statutory demand requirements.

Plaintiffs appealed the October 2007 dismissal to the Sixth Circuit Court of Appeals, which affirmed this court's decision in all respects. *See Lay v. Burley Stabilization*

*Corp.,* 312 Fed.Appx. 752 (6th Cir. 2009). The Sixth Circuit emphasized that "the plaintiffs' claims are derivative under Tennessee law and therefore the district court properly dismissed the action for failure to comply with the demand requirement." *Id.* at 763.

The current complaint is plaintiffs' eighth in a four-year series of substantively identical challenges to BSC's administration of the federal tobacco price support program. The fifty-five plaintiffs are a minority of BSC's 140,000 members. Plaintiffs now seek to reassert the same or substantially similar claims, while still having made no effort to comply with Tennessee's demand requirements. Plaintiffs' complaint acknowledges that "No demand for action by the BSC's directors has been made pursuant to T.C.A. § 48-56-401." Instead, plaintiffs now allege that demand would be futile because of "the defenses asserted and positions taken by BSC" in earlier litigation. As with their prior complaints, plaintiffs seek to liquidate and distribute all BSC assets and effectively to dissolve the cooperative.

## II. Standard for Motion to Dismiss

Defendant BSC moves to dismiss all plaintiffs' claims on the grounds that plaintiffs' claims are derivative in nature, and this court lacks subject matter jurisdiction over said claims as a result of plaintiffs' repeated failure to exhaust their corporate remedies and to otherwise comply with the requirements for asserting derivative claims as set out in Tenn. Code Ann. § 48-56-401.

A "district court may, at any time, *sua sponte* dismiss a complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure when the allegations of a complaint are totally implausible, attenuated, unsubstantial, frivolous, devoid of merit or no longer open to discussion." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999).  Federal courts are always "under an independent obligation to examine their own jurisdiction," *FW/PBS, Inc. v. City of Dallas,* 493 U.S. 215, 231 (1990), and a federal court may not entertain an action over which it has no jurisdiction.  *See Insurance Corp. Of Ireland, Ltd v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 701 (1982).  If a court lacks jurisdiction, it "cannot proceed at all in any cause; jurisdiction is power to declare law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the case."  *Steel Co. v. Citizens for a Better Environment,* 523 U.S. 83, 94 (1998).

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss a complaint for failure to state a claim upon which relief can be granted.  A motion to dismiss under Rule 12(b)(6) requires the court to construe the complaint in the light most favorable to the plaintiff, accept all the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief.  *Meador v. Cabinet for Human Resources,* 902 F.2d 474, 475 (6th Cir.) *cert. denied,* 498 U.S. 867 (1990).  The court may not grant such a motion to dismiss based upon a disbelief of a complaint's factual allegations.  *Lawler v. Marshall,* 898 F.2d 1196, 1198 (6th Cir. 1990); *Miller v. Currie,* 50 F.3d 373, 377 (6th Cir. 1995) (noting that courts

should not weigh evidence or evaluate the credibility of witnesses).  The court must liberally

construe the complaint in favor of the party opposing the motion.  *Id.*  However, the

complaint must articulate more than a bare assertion of legal conclusions.  *Scheid v. Fanny*

*Farmer Candy Shops, Inc.,* 859 F.2d 434 (6th Cir. 1988).  "[The] complaint must contain

either direct or inferential allegations respecting all the material elements to sustain a

recovery under some viable legal theory."  *Id.* (citations omitted).


### III.  Failure to Comply With the Notice Requirement of T.C.A. § 48-56-401(c)

This court has twice determined, and the Sixth Circuit has affirmed, that

plaintiffs' claims are derivative in nature and must be dismissed based on plaintiffs' failure

to comply with Tennessee's prelitigation demand requirements for derivative litigation.

Tennessee law mandates that plaintiffs "allege with particularity the demand made, if any,

to obtain action by the directors and either why the plaintiffs could not obtain the action or

why they did not make the demand."  T.C.A. § 48-56-401(c); *see also* F.R.C.P. 23.1 (The

complaint should also allege with particularity the efforts, if any, made by the plaintiff to

obtain the action the plaintiff desires from the directors or comparable authority and, if

necessary from the shareholders or members, and the reasons for the plaintiff's failure to

obtain the action or for not making the effort).


In *McCarthy v. Middle Tenn. Elec. Membership Corp.*, 466, F.3d 399 (6th Cir.

2006), the Sixth Circuit held that to establish demand futility under Tennessee law, a

plaintiff must demonstrate: "(1) that the board is interested and not independent and (2) that

the challenged transaction is not protected by the business judgment rule." *Id.* at 410.

Plaintiffs contend that demand would have been futile in this case "given the defenses asserted and positions taken by BSC in the [prior lawsuits]." Plaintiffs have not cited any authority for their novel argument, and the court has found none. Moreover, plaintiffs' position would effectively nullify Tennessee's long-standing demand requirement. As pointed out by BSC, under plaintiff's argument, a derivative plaintiff could effectively manufacture futility and bypass the demand requirement simply by filing multiple lawsuits to which the corporation would be forced to respond. Nothing in Tennessee law permits such a result and plaintiffs have not cited any authority that states otherwise.

Despite conclusory allegations raised for the first time in plaintiffs' response brief, neither the complaint nor the response brief contain any specific facts to support the allegations that the majority of BSC's board is interested or that the business judgment rule is inapplicable. Because plaintiffs have failed to allege specific facts to demonstrate either prong of Tennessee's test for determining demand futility, the court finds that plaintiffs have failed to plead adequately that a prelitigation demand would be excused. Without compliance with the requirements of T.C.A. § 48-56-401(c), this court lacks subject matter jurisdiction and the complaint fails to state a claim upon which relief can be granted. F.R.C.P. 12(b)(1) and (6).

## IV.  BSC's Claim for Attorney Fees and Costs

BSC moves the court for an order imposing sanctions on plaintiffs for the filing of the current complaint in contravention of the prior decisions of both this court and the Sixth Circuit. BSC contends that plaintiffs have commenced and maintained this proceeding frivolously and in bad faith by failing to comply with the statutory and common law prerequisites for asserting derivative claims in Tennessee, despite having been repeatedly advised of the prerequisites in previous efforts to assert the same or substantially similar claims. Because of the plaintiffs' frivolous and/or bad faith pursuit of this litigation, BSC asserts it is being forced to incur needless litigation-related expenses, including attorney fees, for which BSC is entitled to recover from plaintiffs pursuant to T.C.A. § 48-56-401(e).

The Tennessee statute provides:

> On termination of the proceeding, the court may require the plaintiffs to pay any defendant's reasonable expenses (including counsel fees) incurred in defending the suit if it finds that the proceeding was commenced frivolously or in bad faith.

*Id.* In addition, the federal courts possess "the inherent power to award fees when a party litigates in bad faith, vexatiously, wantonly or for oppressive reasons," and the court finds that "the claims advanced were meritless, that counsel knew or should have known this, and that the motive for filing the suit was for an improper purpose such as harassment." *Whitmire v. Way-FM Group, Inc.,* 2008 WL 5412455 (M.D.Tenn. Dec. 23, 2008); *see also McDonald v. Summers*, 2005 WL 2249880 (M.D.Tenn. Sept. 15, 2005).

This lawsuit represents the third time that plaintiffs have sued BSC in connection with its administration of the federal Tobacco Price Support Program. This court, as well as the Sixth Circuit Court of Appeals, have found that plaintiffs' claims are derivative and must comply with the requirements for such litigation set out in T.C.A. § 48-56-401(c), including the requirement that demand on BSC's directors must precede any litigation in court. Plaintiffs have again failed to make the required demand and have failed to show that demand would be futile in accordance with applicable law.

The demand rule exists to promote intracorporate dispute resolution, to give corporate managers an opportunity to address alleged wrongs without subjecting the corporation to costly litigation. *See In re Arrow Inv. Advisors LLC,* 2009 WL 1101682 (Del.Ch. Apr. 23, 2009). Under T.C.A. § 48-56-401(e), the court may require the plaintiffs to pay defendant's reasonable expenses (including counsel fees) incurred in defending the suit if the court finds that the proceeding was commenced frivolously or in bad faith. This is plaintiffs' third flawed attempt at stating a cause of action against BSC. BSC and its members should not be required to shoulder the burden of relitigating the same fight over and over, which is what plaintiffs are forcing BSC to do. Therefore, the court finds that BSC is entitled to expenses and attorney fees incurred in responding to the complaint pursuant to T.C.A. § 48-56-401(e).

-10-

## Conclusion

For the reasons set forth above, the motion to dismiss filed by defendant BSC [Doc. 4] is **GRANTED**, whereby plaintiffs' complaint is **DISMISSED WITHOUT PREJUDICE**.  In addition, BSC's motion for attorney fees and costs incurred in responding to the complaint is **GRANTED.**   Any remaining motions are denied as moot.


**ENTER:**

     s/ Thomas W. Phillips
United States District Judge